THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIE LEVITSKI

        Plaintiff,                    No. 09-12783
                                     Hon. Gerald E. Rosen
v.                                 Mag. Judge Donald E. Scheer

SYNOVA, INC., a Michigan
Corporation,

        Defendant.
_____/

## OPINION AND ORDER REGARDING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
The U.S. Courthouse, Detroit, Michigan
on _____ June 30, 2010 _____

PRESENT:   Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I. INTRODUCTION

On July 14, 2009, Plaintiff Jennie Levitski filed this lawsuit against her former

employer, Defendant Synova, Inc., alleging violations of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Michigan Elliot-Larsen

Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202 *et seq.*, arising out of the

termination of her employment. The action is presently before the Court on Defendant's

Motion for Summary Judgment, filed on March 31, 2010 at the close of discovery, in

which it seeks judgment in its favor on Plaintiff's claims.

Having reviewed the motion, briefs, and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." See Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings.

## II. <u>FACTS</u>

Plaintiff Jennie Levitski, a 46-year old Michigan resident, is a former employee of Defendant Synova, Inc.. Synova is an information technology professional services company headquartered in Southfield, Michigan, that provides IT staffing, outsourcing and consulting. For purposes of this lawsuit, the company hires two types of employees: those in the Synova corporate offices who provide infrastructure and support, and those who are contracted out or "staffed" to work at various client companies.

Plaintiff was first hired by Synova on August 9, 1999, and immediately contracted out to work at Daimler Chrysler as an administrative assistant. In that capacity, she provided administrative support to a Chrysler IT manager. Her responsibilities included answering phones, scheduling meetings, and maintaining organization for an office of over 180 Chrysler employees. She did not provide any services directly to Synova. Over the course of almost seven years at Chrysler, Plaintiff received good performance reviews

and positive feedback from suppliers. Synova corporate officers gave her a 3.7 out of 4.0 on a 2002 performance review and a 3.9 out of 4.0 on a subsequent review in 2005.[1]

On February 20, 2006, Tim McClure, the then-Vice President of Automotive and Manufacturing for Synova (and current Executive Vice President), offered Plaintiff a newly-created position as an account support representative ("ASR") for the company's Chrysler account—a promotion. She was 42 years old at the time. As an ASR, Plaintiff worked out of Synova's corporate office. Her main responsibility was to provide support to Synova employees contracted out to Chrysler. According to Synova's responses to interrogatories, this included, but was not limited to:

> handling submittals and communicating to recruiting team when new orders were issued; handling employee timesheet issues and requests such as issues with time entry, paychecks, and expenses; and maintaining and supporting the employees such as, for example, being available to handle employee issues, processing employee on-boarding [i.e., guiding new employees through application process], processing terms [i.e., managing separation process for outgoing contracted employees when they are no longer needed] and updated reporting metrics, conducting monthly employee visits and lunches, and escorting employees to interviews.

(Def.'s Resp. to Pl.'s Interrog. at 7-8.)[2] When Plaintiff began work in this new position, she was assigned to support approximately 110 IT employees contracted to Chrysler. By

---

[1] Plaintiff notes that the 2005 performance review was not included in her personnel file when produced by Synova in response to the First Set of Interrogatories. She goes on to include a copy of the review in support of her response, without specifying whether it was later produced or how its omission by Synova is relevant to her age discrimination claim (Synova does not contest the fact that Plaintiff received positive feedback in her work as an administrative assistant at Chrysler). In any event, the apparent discrepancy is in no way dispositive to any issue of material fact in this case.

[2] In addition to the general ASR responsibilities, Plaintiff testified that she also temporarily took on some of the responsibilities of the account manager—for example, completing employee evaluations—when the account manager was out on maternity leave.

the time of her termination, that number had dwindled to approximately 35 employees.[3] At the time the suit was filed, the number had further decreased to 18.

On July 27, 2006, five months after Plaintiff was promoted her position as an administrative assistant to ASR, Emily Murawski was hired into Synova's recruiting staff. She was 24 years old. In the months that followed Ms. Murawski shifted between various positions within Synova's corporate offices—from recruiter to account or "step" coordinator to IT staffing manager. She ultimately was offered a position as an ASR for Synova's account with Ford Motor Company sometime in early 2008.[4] As an ASR, Ms. Murawski's job duties were very similar to Plaintiff's—the main difference being the account and the different demands of each client company. The number of Synova employees Ms. Murawski supported at Ford was at all times greater than the number of

---

[3]  As the headcount for contracted employees at Chrysler fell, Plaintiff testified that she asked about business development with other automotive or manufacturing clients in her division and apparently sought more work. She admitted that she was not involved in any of these business development efforts. (Levitski Dep. 33:10-19.) In her response to Synova's Motion, she contravenes this testimony and argues that she assumed business development duties while working as an ASR. (Pl.'s Resp. at 6.) She does not cite a specific portion of the record that supports this apparently contradictory assertion.

[4]  There is some confusion in the record as to exactly when Ms. Murawski took on ASR duties. Synova's Responses to Ms. Murawski's First Set of Interrogatories state: "Since her date of hire on August 14, 2006, Ms. Murawski has held the position of Account Support Representative." (Def.'s Resp. to Pl.'s Interrog. at 8.) However, Mr. McClure testified that he first hired Ms. Murawski as a recruiter on the Chrysler account, then moved her to a "step coordinator" or "account coordinator" position about seven to twelve months later. (McClure Dep. 13:7; 55:7-55:11.) He further testified that she was assigned to the ASR position on the Ford account roughly six to seven months after that. (McClure Dep. 56:4-6.) According to this timeline, Ms. Murawski was promoted to ASR sometime between at the end of 2007 or early 2008. Mr. McClure testified that Ms. Murawski's current official title is: "Account Support Representative for Chrysler, Ford Motor, and Visteon, and unofficial acting account manager of Chrysler." Finally, an internal company phone directory from that period lists Ms. Murawski as a "staffing manager" through April 2008. (Pl.'s Resp., Ex. E, Internal Phone List.) Ultimately, there is no dispute that prior to Plaintiff's termination Ms. Murawski was the ASR on the Ford account.

4

employees Plaintiff supported at Chrysler. (Def.'s Mot. for Summ. J., Ex. 4, McClure Dep. 42:17-43:1; *see also* Ex. 1, Levitski Dep. 31:22-32:2.) At the time of Plaintiff's termination, Synova had approximately 300 contracted employees at Ford and only about 35 at Chrysler. According to Mr. McClure, Ms. Murawski also performed certain additional functions for the Ford account that Plaintiff did not do for Chrysler. Most notably, Ms. Murawski handled "Requests for Information" (RFI) or "Requests for Quotes" (RFQ), while Plaintiff did not for the Chrysler account. Mr. McClure could not recall whether he had ever asked Plaintiff to do these, but testified that he believed she lacked the knowledge or technical ability to navigate through the relevant electronic forms. Mr. McClure also testified that Ms. Murawski reviewed resumes for the Ford account, but that Plaintiff did not for the Chrysler account.

In 2008, Synova began experiencing economic difficulties in the form of reduced revenue, slowed workflow and decreased headcounts of contracted employees.[5] Mr. McClure testified that, after reviewing weekly revenue reports, weekly gross profit margin reports and termination reports prepared by Synova's accounting department, it was clear that the company needed to terminate some employees. He met with Tim Manney, the President of Synova, and began to develop a workforce reduction plan by

---

[5] There is a discrepancy in the record on the exact timing of the economic slowdown, specifically with respect to the Chrysler account. Mr. McClure testified that the Chrysler account began to dwindle in *early 2009*. (McClure Dep. 19:8-12.) However, a chart documenting the "headcount" of Synova contracted employees at Chrysler indicates that the numbers had begun to drop in late 2007 and early 2008. For example, in June 2008 the number of contracted employees at Chrysler had dropped from a high in June 2006 of 111 to only 68 employees. (Def.'s Mot., Ex. 5.) Plaintiff testified that she noticed the number of Synova employees at Chrysler was trending down when she was working as an ASR on the account. (Levitski Dep. 32:10-19.) She separately alleged that the Ford account also experienced reduced revenue but does not specify which parts of the record supports this fact.

assessing which areas were experiencing reduced revenue in his division and which employees were involved in that revenue. (McClure. Dep. 11:13-25.)[6] Together, they discussed the overall workforce reduction, including the individuals proposed for termination. Ultimately, three employees, including Plaintiff, were terminated in the Automotive and Manufacturing Division (the division for which Mr. McClure was responsible at the time) for "economic reasons."[7] Mr. McClure testified that he alone made the final decisions to discharge each these employees, but he was not involved with the decision to terminate employees from other departments or the reduction of employees outsourced to automotive or manufacturing clients.

At the time that Mr. McClure was reviewing reduced revenues, Plaintiff and Ms. Murawski were the only two Account Support Representatives in the Automotive and Manufacturing Division. Mr. McClure explained that after reviewing the accounts in his department he decided to discharge Plaintiff because the headcount of contracted Synova employees at Chrysler had dramatically decreased. He met with Plaintiff on September 17, 2008 to inform her of his decision, effective September 26, 2008. In that meeting, Plaintiff did not recall Mr. McClure citing any particular reason for the decision. She met with Mr. Manney shortly afterwards to ask him why she had been selected for

---

[6] Plaintiff also testified that she was aware that Synova management was considering reducing its workforce in light of the decreasing headcounts of contracted employees.

[7] The two employees in the division under Mr. McClure's supervision who were discharged in addition to Plaintiff between September 2008 and February 2009 were: Robert Burck, age 63 at time of termination, and Gina Capponi, age 30 at time of termination. Mr. McClure testified that, like Plaintiff's termination, these terminations were driven by "economic reasons," "Lack of work, basically. Evaluating work flow." (McClure Dep. 28:13; 30:21.)

termination.  According to Plaintiff, Mr. Manney explained that it was because there was no business at Chrysler.  She admitted that no one spoke to her about her age.  At the time of her termination, Plaintiff was 44 years old and the only other Synova corporate employee working on the Chrysler account besides Mr. McClure.

Later, Mr. McClure testified that he did not review past performance evaluations for either Plaintiff or Ms. Murawski in making his decision.  (No performance evaluations appear to have been conducted for either Plaintiff or Ms. Murawski when they were working as ASRs.)  In addition, he recalled looking at both employees' resumes only after he had already decided to terminate Ms. Murawski on the basis of the shrinking size of the Chrysler account.  He explained: "I knew the people.  I didn't have to [compare resumes to make a decision]."  (McClure Dep. 62:14.)  Nevertheless, Mr. McClure later testified that he believed Ms. Murawski had technical and computer skills, as well as recruiting experience, that Plaintiff did not possess.  According to her resume, Plaintiff's undergraduate degree was in business administration and her experience included a working knowledge of Microsoft Office programs including MS Word, Excel, and Outlook.  She had almost seven years of experience as an administrative assistant, but only about two and a half years experience as an ASR in the corporate office.  In comparison, Ms. Murawski's undergraduate education was technical, including a major in applied mathematics and a minor in computer science.  Her career at Synova was exclusively in the corporate offices, including approximately six months as an ASR at the time of Plaintiff's termination.  Mr. McClure later testified that Ms. Murawski's technical

background and internship experience were among the reasons she was initially promoted to the ASR position.

Within 90 days of her termination, Plaintiff's job duties on the Chrysler account were assumed by Ms. Murawski. According to Mr. McClure, Ms. Murawski also kept her pre-existing duties on the Ford account and other accounts in the Automotive and Manufacturing Division. By June 2009, eleven total employees had been discharged across the company: three in Mr. McClure's division and eight in other divisions.[8] Plaintiff appears to have been the first of these eleven employees to be discharged. During the same period, Mr. McClure testified that wages, commissions and bonuses were reduced on the Ford account.

On December 3, 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EECO issued her a right to sue letter on April 30, 2009. She filed this action against Synova on July 14, 2009, asserting claims under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202 *et seq.* Through her Complaint, she alleges that she was improperly discharged because of age discrimination. Specifically, she argues that: (1) she was not terminated as part of a workforce reduction but rather was replaced by Ms. Murawski, a younger employee; (2) she possessed superior qualifications than Ms. Murawski; and (3) Synova's stated reason for termination—the workforce reduction—was pretext for unlawful discrimination.

---

[8]  Mr. McClure testified that he did not think that the other eight employees were necessarily terminated because of the exact same economic reasons that triggered terminations in his division.

Discovery has closed and Synova now moves for summary judgment. Synova maintains that Plaintiff lacks sufficient evidence, either direct or circumstantial, to prove age discrimination, particularly since her termination occurred in the course of a workforce reduction. Moreover, Synova argues that even if Plaintiff has proffered some evidence of discrimination, it is insufficient to prove that the company's stated reasons for terminating her employment were mere pretext for discrimination.

### III. ANALYSIS

**A.     Standards Applicable to Summary Judgment Motion**

Under the relevant Federal Rule of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on an issue as to which it bears the burden of proof, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp*., 434 F.3d 810, 813 (6th Cir. 2006). However, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, all affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.      Standards Applicable to ADEA Claims**

The ADEA provides that it is unlawful for an employer or agent of the employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can establish a claim for unlawful discrimination under the ADEA by producing either direct evidence or circumstantial evidence of age discrimination. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc*. 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*)). Circumstantial evidence is evidence that "allows a fact finder to draw a

reasonable inference that discrimination occurred." *Id*. The Supreme Court recently announced that under either method of proof in an ADEA case, the burden of persuasion remains on the plaintiff at all times to show that "age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Financial Services, Inc*., --- U.S. ---, 129 S. Ct. 2343, 2351 (2009). In this case, Plaintiff does not appear to allege or offer direct evidence of discrimination.

Where only circumstantial evidence is presented, the Court analyzes age discrimination claims under the familiar *McDonnell Douglas* burden-shifting framework. *Geiger*, 579 F.3d at 622; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Following the Supreme Court's decision in *Gross*, which cast some doubt on the applicability of this evidentiary test to ADEA circumstantial evidence claims, the Sixth Circuit reaffirmed that the *McDonnell Douglas* framework remains applicable and useful. *Geiger*, 579 F.3d at 622 (citing *Martin*, 548 F.3d at 410). Thus, to establish an unlawful age discrimination claim using circumstantial evidence in this circuit, a plaintiff must first show that: (1) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position, and (4) she was replaced by a younger person. *See, e.g., Tuttle v. Metropolitan Gov't.,* 474 F.3d 307, 317 (6th Cir. 2007). In cases involving a reduction in workforce, the Sixth Circuit further modifies the fourth prong of a *prima facie* claim to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Blair v. Henry Filters, Inc*., 505 F.3d 517, 529 (6th Cir. 2007) (overruled on other grounds)

(quoting *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004)). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. *Tuttle*, 474 F.3d at 317. If the defendant then articulates such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination. *Id.*

## C.    *Prima Facie* ADEA Claim

### 1.    *Plaintiff's termination occurred as a result of a reduction-in-force.*

In this case, the parties do not dispute that Plaintiff has satisfied the first, second and third elements of her *prima facie* case of age discrimination. That is, Plaintiff: (1) was over forty years old (the protected class under the ADEA); (2) suffered an adverse employment action when she was terminated; and (3) was qualified for the ASR job. The primary issue at this stage is whether Plaintiff was discharged pursuant to a reduction-in-force ("RIF") and thus whether she must make a supplementary showing to satisfy the fourth prong of a *prima facie* case. *See Blair*, 505 F.3d at 529.

A reduction-in-force occurs when "business considerations cause an employer to eliminate one or more positions within the company." *Geiger*, 579 F.3d at 622 (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)). The Sixth Circuit has explained:

> An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced

only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465. In addition, when an employer fundamentally changes the nature of the employment to enable a person to assume the plaintiff's duties in addition to his or her own—for example, promoting a part-time employee to a full-time position—the Sixth Circuit has held that this constitutes a replacement. *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, (6th Cir. 1997).

At the outset, the Court notes that Plaintiff does not contest that the company was facing economic difficulties and needed to downscale its corporate staff at the time of her termination in September 2008. Plaintiff concedes that an RIF was necessary and that a full time account support representative was not needed on the Chrysler account. She agrees that an ASR should have been laid off due to slowed business and economic reasons, but she believes Synova was wrong in selecting her for termination. At deposition, when asked about business conditions prior to her termination, Plaintiff Plaintiff testified:

> Q: . . . Did it surprise you looking at the numbers of your head count decreasing that the company was going to have to reduce heads?
>
> A (Plaintiff): No.
>
> Q: Do you agree - I understand you don't agree with the fact that you were the one selected to be terminated. But do you agree that with the number of people left at Chrysler that there wasn't a need for a full time account support rep at Chrysler anymore?
>
> A: Correct.
>
> Q: You agree with that?

A:  I agree.

(Levitski Dep. 42:11-22.)   In spite of this admission, she goes on to question whether her termination occurred in the context of this RIF.

First, Plaintiff argues that she was not fired as part of the RIF because Mr. McClure testified that the slow-down at Chrysler did not begin until January 2009 and, therefore, the stated reason for her dismissal (the dwindling size of the Chrysler account) could not have motivated Mr. McClure's decision in September 2008.  (*See* McClure Dep. 19:8-12.)  In addition, she points out that in Synova's Brief in Support of the Motion for Summary Judgment, the company states: "In *December 2008*, Synova began implementing the workforce reduction.  (Ex. 6, List of Position Eliminations.)"  (Def.'s Mot. for Summ. J., Br. in Supp. 4) (emphasis added).  The chart of terminated employees referenced by Synova includes Plaintiff, along with ten other employees terminated through June 2009.[9]  Plaintiff argues that in light of these statements, her termination occurred before the actual RIF plan was put in motion.  The record is admittedly muddled on this point, as noted in footnote 5, *supra*.  However, despite apparent inconsistencies, Plaintiff does not ultimately dispute the accuracy of Synova's chart for employees contracted to Chrysler, which shows dwindling headcounts over the course of several years, beginning well before 2008.  (*See* Levitski Dep. 32:10-19; 32:23-33:3.)  Tellingly, Plaintiff herself admitted that she was aware of Chrysler's falling numbers before her

---

[9]  The chart is alphabetical by terminated employee last name, beginning with an employee terminated in December 2008.  This perhaps explains the discrepancy between Synova's brief—stating that terminations began in December—and the chart itself— which shows terminations beginning in September.

termination and was equally aware that Synova management was considering terminating some employees when she was still employed there. In her deposition, Plaintiff was asked what she knew prior to her termination:

> Q: Did you have any information that the company Synova was going to undergo a reduction in force?
>
> A: Yes.
>
> Q: How did you learn that?
>
> A: Staff meetings.
>
> Q: And what was told to you at staff meetings?
>
> A: That we had to be careful because times were changing, and Tim [McClure] would do his best to save everybody, but that there would be some reductions.
>
> Q: And was this just – these were just staff meetings for the automotive division?
>
> A: Correct.

(Levitski Dep. 41:25-42:10). Given these direct admissions which are corroborated by Mr. McClure's testimony, the Court does not find the discrepancies in the record regarding the actual RIF start date sufficient to create a genuine issue of material fact.

Next, Plaintiff argues that, even if Synova underwent an RIF, she was replaced by Ms. Murawski after her discharge and therefore can satisfy a *prima facie* case without making any additional showing. She contends that after her termination, Ms. Murawski gave up the ASR responsibilities she previously had on the Ford and other automotive accounts in order to take on Mr. Levitski's old duties on Chrysler. Plaintiff refers to "[a] co-workers [sic] impression . . . that after Plaintiff was terminated, Murawski took over

the smaller account, and left her prior duties at Ford to its prior [account] managers."

(Pl.'s Resp. at 12.)  The only evidence in the record that remotely supports this assertion

is the affidavit of Gina Capponi—the former Synova employee who gives her "feeling"

that Plaintiff should have been retained and her "impression" that Ms. Murawski's

responsibilities on the Ford account were left to the account managers previously staffed

on Ford.  (*See* Pl.'s Resp., Ex. F, Capponi Aff. ¶ 4.)  These statements do not meet the

basic standards for evidence proffered in support of or against a motion for summary

judgment. *See Wilson v. Ohio Dept. of Job & Family Servs.*, 178 Fed. Appx. 457, 464

(6th Cir. 2006) ("Conclusory allegations and subjective beliefs are insufficient to

establish a genuine issue of material fact."  ).  Here, Ms. Capponi's statements are highly

subjective and conclusory.  By contrast, Mr. McClure, who served as Ms. Murawski's

supervisor during this period, unambiguously testified that she took on the Chrysler

account in addition to her other duties.  Thus, even in a light most favorable to Plaintiff,

the great weight of the record indicates that Synova was reducing its workforce and that

Ms. Murawski's assumption of Plaintiff's ASR duties in addition to her own did not

constitute a replacement.  *See Geiger*, 579 F.3d at 623; *Barnes*, 896 F.2d at 1465 ("[A]

person is not replaced when another employee is assigned to perform the plaintiff's duties

in addition to other duties."); *Wilson*, 178 Fed. Appx. at 465 (finding that a combination

of two positions into one "clearly does not meet the definition of replacement"); *Spencer

v. Hilti, Inc.*, No. 96-3396, 1997 WL 359094, at *5 (6th Cir. 1997) ("It is clear . . .  that

we were attempting in *Barnes* to distinguish between the replacement of an employee and

situations where there was a consolidation of jobs designed to eliminate excess worker capacity.").

2.  *Plaintiff fails to make the additional showing required to satisfy the fourth prong in an RIF Case.*

Because the termination occurred as part of a reduction in workforce, Plaintiff is required to provide "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Geiger*, 579 F.3d at 622. This heightened evidentiary standard is required because "the most common legitimate reason for the discharge of a plaintiff in a [reduction in force] situation is the work force reduction." *Id.* (modification in original). Such evidence must be "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.*; *see also Barnes*, 896 F.2d at 1465; *Blair*, 505 F.3d at 529 (finding "such evidence might constitute a circumstance, among others, giving rise to an inference of age discrimination, even if this evidence is not sufficient to show that the plaintiff was 'replaced,' as *Barnes* defines the term"). A plaintiff could make this additional showing by, for example, proffering evidence "that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff." *Barnes*, 896 F.2d at 1466. "Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive." *Id.* Ultimately, however, the "mere fact that a younger employee . . . receives better treatment than an older one is insufficient to carry the burden of proof in a case under the federal Age Discrimination in Employment Act."

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010)

(quoting *Dabrowski v. Warner-Lambert Co.*, 815 F.2d 1076, 1078-79 (6th Cir. 1987));

*but see Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)

(holding that where plaintiff proffered evidence that, unlike younger employees in his

department whose positions were eliminated, he was not offered the opportunity to

transfer to other positions within the company, plaintiff had demonstrated *prima facie*

case of age discrimination).

 Here, Plaintiff does not allege that there is any statistical or direct evidence of

discrimination. Nor is there any admissible evidence in the record to suggest that anyone

at Synova made statements indicative of age discrimination.[10]  Rather, Plaintiff argues

---

[10]  The sole evidence that might be considered evidence  of statements indicative of a
discriminatory motive appears in Plaintiff's deposition testimony:

> Q:  . . . how do you know other had heard comments about your age?
>
> A:  I was told.
>
> Q:  Who told you?
>
> A:  Gina Capponi.
>
> Q:  Anybody else besides Gina?
>
> A:  No.
>
> Q:  What did Gina tell you?
>
> A:  I don't recall.  I don't know how – what she said.
>
> Q:  You don't remember what she said?
>
> A:  No.

that she can satisfy the heightened evidentiary standard in an RIF case with evidence that she was more qualified than Ms. Murawski and that Ms. Murawski was treated more favorably than her. She offers the following circumstantial evidence in support of her position: (1) a former supervisor's affidavit suggesting that Ms. Murawski had performed poorly as a recruiter prior to being promoted to an ASR position; (2) the fact that Plaintiff performed account support and account manager duties for the Chrysler account since 2006, whereas Ms. Murawski had kept the job for only six months at the time of Plaintiff's termination and had not previously done account manager duties; and (3) the Ford account operated without an ASR prior to Ms. Murawski being hired to that position.

None of the evidence cited by Plaintiff advances her claim that she was singled out for discriminatory reasons. First, although the parties expend a great deal of energy disputing the relative qualifications of Plaintiff and Ms. Murawski, very little of it specifically addresses whether Plaintiff was actually a superior ASR to Ms. Murawski.

---

Q: I mean, did she say something about your age or did she say that somebody else said something about your age?

A: She said it's been mentioned around the office. So – I don't recall who she heard it from or where it came from.

(Levitski Dep. 45:3-20.)

These statements are unquestionably inadmissible hearsay—out-of-court statements offered for the truth of the matter asserted—and cannot be considered on summary judgment. *See Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Moreover, even if the statements were admissible, they do not establish that Mr. McClure or any others that may have been involved in the termination decision made statements indicative of a discriminatory motive. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990) (holding that an isolated discriminatory remark made by one with no managerial authority over the adverse employment action is not indicative of age discrimination).

Plaintiff's reliance on testimony about Mr. Murawski's job performance in a prior, unrelated position as a recruiter does not establish that she was necessarily less qualified to serve as an ASR. Similarly, Plaintiff's years of experience prior to her termination are not directly relevant insofar Synova proffered clear evidence that seniority was not a factor in the termination decision and evidence that Mr. McClure believed Plaintiff did not perform certain duties on the Chrysler account (e.g., filling out RFIs and RFQs, performing employee evaluations) which Ms. Murawski performed on the much larger Ford account. Thus, Plaintiff's total months on the job are not evidence of superior qualification when technical ability and the size of the relative automotive accounts were Mr. McClure's main considerations. Finally, the fact that the Ford account operated without an ASR prior to Ms. Murawski being hired to that position was clearly explained in the record: Ford did not need an ASR prior to Ms. Murawski's hiring because it was a significantly smaller account. She was hired when the account grew and the account managers needed more support. Taken together, Plaintiff's circumstantial evidence does not amount to evidence that her qualifications were superior to Ms. Murawski's for the ASR work.

Lastly, Plaintiff has failed to show that Ms. Murawski was treated more favorably. The mere fact that Ms. Murawski stayed on and was given more responsibilities, while Plaintiff was terminated is not itself evidence of being singled out. *See Schoonmaker*, 595 F.3d 261, 267. For all the foregoing reasons, the Court finds that Plaintiff has failed to set out a *prima facie* case of age discrimination.

**D.    Defendant's Legitimate, Nondiscriminatory Reason for Plaintiff's Termination and Plaintiff's Evidence of Pretext**

Even if Plaintiff had been able to make out a *prima facie* case, Synova has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff: "its reduction in workforce due to declining revenue." (Def.'s Mot. for Summ. J. at 13.) *See Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 941, 944 (6th Cir. 1987) (holding that an employer's decision to reduce its workforce is a legitimate reason to discharge even qualified employees). Accordingly, the burden of production shifts back to Plaintiff to show by a preponderance of the evidence that the proffered explanation was a pretext for intentional age discrimination. *See Barnes*, 896 F.2d at 1464. As noted above, she retains the ultimate burden of persuasion to show that "that age was the 'but-for' cause of [her] employer's adverse action." *Geiger*, 579 F.3d at 620.

The determination of whether the reasons proffered by an employer are pretextual requires a heightened examination of "the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742 (1993)). A plaintiff can establish pretext by showing that the stated reason either: (1) was false or had no basis in fact; (2) did not actually motivate the employer's decision; or (3) was insufficient to motivate the employer's decision. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003). The reasonableness of an employer's decision "may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual

motivation." *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into "whether the employer made a reasonably informed and considered decision before taking an adverse employment action")). Finally, the employer's proffered reason "cannot be proved to be a pretext 'unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason.'" *Harris v. Metro Gov't of Nashville and Davidson County*, 594 F.3d 476, 486 (6th Cir. 2010) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515)).

First, to the extent that Plaintiff attempts to show that the proffered reason had no basis in fact, she must present evidence that "the proffered bases for [her] discharge never happened, i.e., that they are 'factually false.'" *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds). In this case, there is no question in the record that Synova no longer needed an ASR solely dedicated to the Chrysler account as the headcount of contracted employees at the client company fell. Plaintiff admitted as much in her deposition testimony. Moreover, Synova proffered uncontroverted testimony that at least two other employees from her division were eliminated for the same "economic reasons" in the months that followed Plaintiff's termination and that eight others were terminated within a year. Thus, there is ample factual support for Synova's stated reason for termination.

Second, insofar as Plaintiff argues that the workforce reduction did not actually motivate Synova's decision, she must show that the "sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's

explanation is a pretext, or cover-up." *Id.* Here, Plaintiff has proffered no evidence that age was a factor beyond arguing that Ms. Murawski is a younger employee who was not terminated. She submits the affidavit of Gina Capponi, which states that Mr. McClure, flirted with and gave preferential treatment to Ms. Murawski. However, this testimony, as noted above, is largely subjective and conclusory. Moreover, even if taken as true, Ms. Caponi's affidavit fails to show that Plaintiff was discriminated against because of her age. *Schoonmaker*, 595 F.3d at 269 ("Even if [defendant's] reasons were subjective, the evidence does not raise an inference of age based discrimination.").

The third type of rebuttal typically consists of evidence that other employees, particularly those not in a protected class, were not fired even though they engaged in similar conduct which the employer claims motivated its plaintiff's discharge. *Id.* In this case, two other employees were eliminated from Plaintiff's division for the same "economic reasons." At least one was not in the protected class.

Plaintiff separately claims that Synova's stated reasons for terminating Plaintiff are pretext for age discrimination because the company failed to abide by objective criteria. However, Mr. McClure testified that he considered the size of each account, the dwindling revenue, technical skills and education when making his decision. This testimony is uncontroverted and Plaintiff has proffered no evidence to indicate that these considerations were improperly subjective or somehow strayed from Synova employment practices. Moreover, "even if we assume that Defendant's evaluation process was haphazard . . . there exists no reasonable inference that Defendant discriminated on the basis of age." *Skelton v. Sara Lee Corp.*, 249 Fed. Appx. 450, 462 (6th Cir. 2007); *see*

*also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (noting mere conjecture that an employer's explanation is a pretext is "an insufficient basis for denial of summary judgment") (internal quotations omitted).

Taken together, even assuming that Plaintiff has established a *prima facie* case, the record does not create a "reasonable inference" of age discrimination. *Schoonmaker*, 595 F.3d at 269. Viewing the record in a light most favorable to Plaintiff, the Court finds that she has failed to demonstrate that her age was the "but for" cause of her termination. *Gross*, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009). Accordingly, Synova's Motion for Summary Judgment on Plaintiff's ADEA claim shall be granted.

## F.      Plaintiff's ECLRA Claim

The ELCRA makes it unlawful for an employer to "fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age." Mich. Comp. Laws § 37.2202(1)(a). ELCRA claims are analyzed under the same standard as federal ADEA claims. *See Blair*, 505 F.3d at 532 (analyzing ADEA and ELCRA claims concurrently under the *McDonnell Douglas* standard in a work force reduction case). Here, because Plaintiff has not met her burden of establishing a *prima facie* claim or pretext under the *McDonnell Douglas* burden-shifting framework applicable to ADEA claims, she similarly fails to establish a claim under the ELCRA.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for

Summary Judgment [Dkt. #20] is GRANTED.

This case is now closed.


s/ Gerald E. Rosen
Chief Judge, United States District Court

Dated: June 30, 2010



I hereby certify that a copy of the foregoing document was served upon counsel of record on July 1, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137